**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 08-10289 (BLS) |
| CHARYS HOLDING COMPANY, INC. and | ) |
| CROCHET & BOREL SERVICES, INC., | ) Chapter 11 |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| ——————————————————————— | ) |
| CHARYS LIQUIDATING TRUST and | ) |
| C&B LIQUIDATING TRUST, | ) Adv. Pro. No. 10-50204 (BLS) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| GROWTH MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————————— | )   Re: Docket No. 7 |

Brett D. Fallon
MORRIS JAMES LLP
500 Delaware Avenue,
Suite 1500
P.O. Box 2306
Wilmington, DE 19801

Christopher Heagy
TYDINGS & ROSENBERG LLP
100 East Pratt Street,
26th Floor
Baltimore, MD 21202

*Counsel for Defendant
Growth Management, LLC*

Michael G. Busenkell
WOMBLE, CARLYLE
SANDRIDGE & RICE, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

Philip J. Mohr
WOMBLE, CARLYLE
SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101

*Counsel for Plaintiffs Charys
Liquidating Trust and
C&B Liquidating Trust*

OPINION[1]

Before the Court is a motion to dismiss (the "Motion") [Docket No. 7] brought by Growth Management, LLC ("Growth Management" or "Defendant") seeking dismissal of the First Amended Complaint (the "Complaint") [Docket No. 10] filed by the Charys Liquidating Trust and the C&B Liquidating Trust (together, the "Trusts" or "Plaintiffs").  The Complaint asserts five counts.  Counts I and III seek avoidance of certain transfers on actual fraudulent transfer theories pursuant to sections 548(a)(1)(A) and 544 of the Bankruptcy Code.  Counts II and IV seek avoidance of certain transfers on constructive fraudulent transfer theories pursuant to sections 548(a)(1)(B) and 544 of the Bankruptcy Code.  Count V seeks recovery of avoided transfers pursuant to section 550 of the Bankruptcy Code.  By the Motion, Defendant seeks dismissal of the Complaint for failure to state a claim upon which relief can be granted. For the following reasons, the Court will deny the Motion.

## BACKGROUND

Prior to its chapter 11 filing, Charys Holding Company, Inc. ("Charys") was engaged in acquiring companies focused on (i) remediation and reconstruction; and (ii) telecommunications

---

[1]    "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

2

infrastructure.  (Compl. ¶ 9).  Pursuant to this growth
strategy, Crochet & Borel Services, Inc. ("C&B") was acquired by
Charys on June 5, 2006.  (Id. at ¶ 10).  Prior to the C&B
acquisition and in connection therewith, Charys entered into a
consulting agreement ("the Consulting Agreement") with Michael
Thomas ("Thomas") and Growth Management.  Under the terms of the
Consulting Agreement, Charys was to "obtain the advice,
contacts, and expert judgment of [Thomas and Growth Management]
with respect to Merger and Acquisition activities of [Charys's]
business." (Compl. Ex. A at 1).  In exchange, Growth Management
and Thomas were to receive certain base fees upon the
acquisition of C&B and other targets.  (Id.).  Charys's Chief
Executive Officer Billy V. Ray executed the Consulting Agreement
on Charys's behalf, without the knowledge or approval of
Charys's senior management or board of directors.  (Compl. at ¶¶
13-14).

Troy Crochet ("Crochet") was the President of C&B both
before and after Charys's acquisition of C&B, and was a director
of Cotton Commercial USA, Inc. ("Cotton").  C&B and Cotton are
alleged to be affiliates of Charys, as that term is defined in
Bankruptcy Code section 101(2).  (Id. at ¶¶ 18, 23).  Crochet
was also Thomas's brother-in-law at all relevant times.  (Id. at
¶ 25).

3

Growth Management received three transfers totaling
$1,350,000 pursuant to the Consulting Agreement (the
"Transfers").  (Id. at ¶¶ 32, 33, 35).  Specifically, Charys
wired Growth Management: (i) $150,000 on September 8, 2006; (ii)
$600,000 on March 9, 2007; and (iii) $600,000 on March 13, 2007.
(Id.).

The $600,000 Transfers were paid out of the proceeds of
certain notes issued by Charys in February 2007 pursuant to an
indenture between The Bank of New York Mellon Trust Company,
N.A., as trustee, and Charys (the "2007 Financing").  (Id. at ¶¶
34, 36).  McMahan Securities Co., L.P. ("McMahan") advised and
assisted Charys in the 2007 Financing.  (Id. at ¶¶ 28, 31).
Plaintiffs allege that Charys did not disclose the existence of
the Consulting Agreement to McMahan and also did not include the
$600,000 payments on the "Use of Proceeds" schedule for the 2007
Financing.  (Id. at ¶¶ 30, 34, 36).

Nearly a year after the 2007 Financing, on February 14,
2008 (the "Petition Date"), Charys and C&B (together, the
"Debtors") filed voluntary petitions for relief pursuant to
chapter 11 of the Bankruptcy Code.  Over a year thereafter, on
February 24, 2009, the Court entered an Order (the "Confirmation
Order") [Docket No. 669] confirming the First Amended Joint Plan
of Reorganization of Debtors and Certain Nondebtor Affiliates
under Chapter 11 of the Bankruptcy Code, Dated December 8, 2008

4

(the "Plan").  Pursuant to the Plan and Confirmation Order, the Trusts were created and certain of the Debtors' assets, including avoidance causes of action were transferred to the Trusts.

Thereafter, on February 10, 2010, the Trusts instituted this adversary proceeding against Growth Management. On April 16, 2010, Defendant filed the Motion, seeking to dismiss the Complaint.  The Trusts filed a response in opposition to the Motion (the "Response") [Docket No. 9], attaching thereto an amended version of the Complaint [Docket No. 10].  Defendant then filed a reply (the "Reply") [Docket No. 13].  This matter has been fully briefed and is ripe for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (H).

## STANDARD OF REVIEW

### A.    Rule 12(b)(6)Pleading Standard

Defendant seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6)

motion tests the sufficiency of a complaint's factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  A court's fundamental inquiry in the Rule 12(b)(6) context is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  In addition, all reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183.

Following the Supreme Court's recent rulings on Rule 12(b)(6) in Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Third Circuit recognized that reviewing a Rule 12(b)(6) motion requires a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. Id. at 210-11.  Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff

6

"has a plausible claim for relief." Id. at 211 (internal

quotations omitted).  Put another way:

> [S]tating . . . a claim requires a complaint
> with enough factual matter (taken as true)
> to suggest the required element.  This does
> not impose a probability requirement at the
> pleading stage, but instead simply calls for
> enough   facts   to   raise   a   reasonable
> expectation   that   discovery   will   reveal
> evidence of the necessary element.

Phillips, 515 F.3d at 234 (internal quotations omitted)

(citations omitted).

## B.    Rule 9(b) Pleading Standards

Plaintiffs have alleged actual fraudulent transfer and

constructive fraudulent transfer claims.  Only actual fraudulent

transfer claims must meet the elevated pleading standards of

Federal Rule of Civil Procedure 9(b).[2]  Rule 9(b), made

---

[2]    As to Plaintiffs' constructive fraudulent transfer claims,
most courts in this Circuit have recognized that such claims are
not analyzed under the heightened Rule 9(b) pleading standard.
China Resource Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc., 788
F.Supp. 815, 819 (D. Del. 1992) ("Despite the similarity in the
terms 'fraud' and 'fraudulent conveyance,' the pleading
requirements for fraud are not necessarily applicable to
pleadings alleging a [constructive] fraudulent conveyance."); In
re AstroPower Liquidating Trust, 335 B.R. 309, 333 (Bankr. D.
Del. 2005) ("[A] claim of constructive fraud need not allege the
common variety of deceit, misrepresentation or fraud in the
inducement.") (quoting Global Link Liquidating Trust v. Avantel,
S.S. (In re Global Link Telecom Corp.), 327 B.R. 711, 717–18
(Bankr. D. Del. 2005)); Contra In re Oakwood Homes Corp., 325
B.R. 696, 698 (Bankr. D. Del. 2005) ("Rule 9(b) applies to
adversary proceedings in bankruptcy which include a claim for
relief under §§ 544 or 548, whether it is based upon actual or
constructive fraud.").

applicable here by Federal Rule of Bankruptcy Procedure 7009,

states:

> In alleging fraud or mistake, a party must
> state with particularity the circumstances
> constituting fraud or mistake. Malice,
> intent, knowledge, and other conditions of a
> person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). The Third Circuit has explained that the

purpose of Rule 9(b)'s requirement that plaintiffs particularly

plead the "circumstances" of the alleged fraud is to "place the

defendants on notice of the precise misconduct with which they

are charged, and to safeguard defendants against spurious

charges of immoral and fraudulent behavior." Seville Indus.

Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791

(3d Cir.1984), cert. denied, 469 U.S. 1211 (1985).

It is not a defendant's fraudulent intent that must be pled

with particularity, but the circumstances constituting fraud.

The Third Circuit has indicated that, "allegations of 'date,

place or time' fulfill these functions, but nothing in the rule

requires them. Plaintiffs are free to use alternative means of

injecting precision and some measure of substantiation into

their allegation of fraud." Seville Indus., 742 F.2d at 791.

Badges of fraud have historically been used to show fraudulent

intent, which may be pled generally under Rule 9(b).

This Court has additionally stated that "[t]he requirements

of Rule 9(b) are relaxed and interpreted liberally where a

trustee or a trust formed for the benefit of creditors . . . is
asserting the fraudulent transfer claims."  <u>Official Comm. Of
Unsecured Creditors of Fedders North America, Inc. v. Goldman
Sachs Credit Partners(In re Fedders North America, Inc.)</u>, 405
B.R. 524, 544 (Bankr. D. Del. 2009).[3]  Although the Rule 9(b)
standard may be somewhat relaxed under these circumstances, this
is not to say that a measure of particularity is not required.
As outsiders to the Transfers, the Trusts may be put to some
trouble, but they are not completely helpless and the pleading
requirements under Rules 8, 9, and 12(b)(6) remain applicable.

       The Court therefore, reviews all of Plaintiffs' claims
under Rule 12(b)(6) and Rule 8, and additionally applies relaxed
Rule 9(b) scrutiny to Plaintiffs' actual fraudulent transfer
claims.

PARTIES' POSITIONS

**A.    Defendant's Position**

       Defendant generally argues that Plaintiffs have failed to
allege sufficient facts from which the Court could infer that

---

[3]    <u>See also</u> <u>In re MacGregor Sporting Goods, Inc.</u>, 199 B.R.
502, 514-15 (Bankr. D.N.J. 1995) ("Courts have noted that, in
the bankruptcy context, Rule 9(b) should be interpreted
liberally, particularly when the trustee, a third party outsider
to the fraudulent transaction, is bringing the action."); <u>In re
O.P.M. Leasing Serv., Inc.</u>, 32 B.R. 199, 203 (Bankr. S.D.N.Y.
1983) ("[G]reater liberality should be afforded in the pleading
of fraud in a bankruptcy case . . . because is it often the
Trustee, a third party outsider to the fraudulent transaction,
that must plead fraud on secondhand knowledge for the benefit of
the estate and all of its creditors.").

the Transfers constitute either actual or constructive fraudulent transfers.

On the actual fraudulent transfer counts, Defendant contends that Plaintiffs have not alleged sufficient facts showing that Charys made the Transfers to Growth Management with actual intent to hinder, delay, or defraud creditors. (Def.'s Br. 1). Defendant does not dispute that the Court may rely upon "badges of fraud" to draw an inference that Charys acted with actual intent, but argues that Plaintiffs have failed to allege sufficient facts supporting any badges. (Def.'s Reply Br. 1-2).

Defendant contends that the only facts alleged to support an inference of actual fraudulent intent are that: (i) the Consulting Agreement was the result of a special familial relationship between Thomas and Crochet; (ii) Thomas personally received substantial monetary benefits from the Consulting Agreement; (iii) Defendant performed no meaningful services for Charys; (iv) the Consulting Agreement was concealed from and not approved by Charys's board of directors, senior management and creditors; and (v) Charys was insolvent at the time of the Transfers. (See id. at 2-3). Defendant argues that the above allegations, made "on information and belief" are factually unsupported and should not be accepted as true in reviewing the Complaint pursuant to Rule 12(b)(6). (Id.)

10

In its initial brief in support of dismissal, Defendant also argued that Plaintiffs constructive fraudulent transfer claims should be dismissed for failure to adequately allege insolvency. (Def.'s Br. 2). In its Reply, Defendant appears to abandon its insolvency argument and instead focuses on its actual fraudulent transfer arguments detailed above. (<u>See</u> Def.'s Reply 1).

## B.   **Plaintiffs' Position**

Plaintiffs generally argue that the amendments to the Complaint vitiate any grounds to dismiss the actual or constructive fraudulent transfer claims pursuant to Rule 12(b)(6) or Rule 9(b).

Plaintiffs argue that the Complaint, as amended, adequately pleads insolvency and the other elements of constructive fraudulent transfer claims. (Pl.s' Br. 2). Plaintiffs also argue that the facts alleged in the Complaint adequately support actual fraudulent transfers, including facts supporting the following four badges of fraud: (i) insider involvement; (ii) inadequate consideration; (iii) transaction concealment; and (iv) debtor insolvency. (<u>Id.</u>). Accordingly, Plaintiff requests that the Court deny the Motion. (<u>Id.</u> at 8).

## V. <u>DISCUSSION</u>

### A.    The Complaint Adequately Alleges Actual Fraudulent Transfers

Counts I and III allege that the Debtors made the Transfers with actual intent to hinder, delay, or defraud their creditors and that there were actual creditors that could avoid the Transfers under the fraudulent transfer laws of several states, including Georgia, Delaware and New York.

Section 548(a)(1)(A) provides that a trustee may avoid transfers of interests in the debtor's property occurring within two years prior to the petition date if the debtor "made such transfer . . . with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted."  11 U.S.C. § 548(a)(1)(A).

Section 544, in turn, authorizes the avoidance of transfers of interests in a debtor's property that are avoidable by unsecured creditors under applicable state law. 11 U.S.C. § 544(b)(1).  Here, Plaintiffs have alleged that the Transfers are avoidable under "applicable state law, including, but not limited to, the Georgia Uniform Fraudulent Transfer Act, Ga. Code § 18-[2]-[7]0 <u>et</u> <u>seq.</u>, the Delaware Fraudulent Transfer Act, 6 Del. C. § 1301 <u>et</u> <u>seq.</u>, [and] the New York Fraudulent

12

Conveyance Act, N.Y. Debt. and Cred. Law. Art. 10 (§ 270 <u>et</u>
<u>seq.</u>) . . . ." (Compl. ¶ 64). Plaintiffs properly plead
various state laws in the alternative and Defendant is on
adequate notice of what claims Plaintiffs are asserting.

Both Delaware and Georgia have adopted the Uniform
Fraudulent Transfer Act ("UFTA"); whereas New York has adopted
the Uniform Fraudulent Conveyance Act ("UFCA"). As a general
matter both UFTA and UFCA, as adopted by these states, allow a
debtor's creditors to recover property when a debtor transfers
its property with actual intent to hinder, delay, or defraud its
creditors. The elements of an avoidable actual fraudulent
transfer under UFTA or UFCA, as adopted by individual states, do
not substantially vary from the elements set forth in section
548(a)(1)(A) and require a showing of actual intent.

Plaintiffs allege that Charys's actual fraudulent intent is
shown by four badges of fraud. In the absence of direct
evidence, courts often rely on "badges of fraud" as
circumstantial evidence of actual fraudulent intent. <u>In re</u>
<u>Fedders</u>, 405 B.R. at 545. These badges include, <u>inter alia</u>: (i)
the relationship between the transferor and transferee; (ii) the
consideration for the transfer; (iii) the insolvency of the
transferor; and (iv) concealment or secrecy of the transaction.
<u>Id.</u> Although the presence of a single badge is not conclusive
proof of intent, the presence of several badges has been found

13

to "provide[] conclusive evidence of actual intent to defraud."
Dobin v. Hill (In re Hill), 342 B.R. 183, 198 (Bankr. D.N.J.
2006)).

Plaintiffs here have alleged facts regarding each of the
above-mentioned badges of fraud.  First, Plaintiffs allege that
Crochet was an insider of Debtor C&B under section 101(31) of
the Bankruptcy Code because he was a person in control of C&B.
(Compl. ¶¶ 15-17).  C&B, in turn, is alleged to be an affiliate
of Charys under section 101(2) of the Bankruptcy Code, therefore
making Crochet an insider of Charys pursuant to section
101(31)(E).  (Id. at ¶¶ 18-19).

Thomas is alleged to have been Crochet's brother-in-law at
all relevant times and accordingly, Thomas is a "relative" of
Crochet pursuant to section 101(44).  As a relative of an
insider of Charys, Thomas is an insider of Charys under section
101(31)(E).  (Id. at ¶ 26).  The Complaint further alleges that
the Transfers were made, in part, for Thomas's direct benefit.
(Id. at ¶ 27).  These facts are sufficient to show a special
relationship between the transferor (Charys) and the transferee
(Thomas/Growth Management).

The Complaint also alleges insufficient consideration on
the part of Growth Management because the Charys received no
meaningful services from Growth Management.  (Id. at ¶ 38).  The
Transfers were also allegedly concealed from Charys's board of

14

directors, senior management, and lenders.  (Id. at ¶¶ 13, 30,
36).  Finally, as further explained below, Charys's insolvency
is sufficiently alleged.

Accordingly, the Complaint states sufficient facts to
support several badges of fraud from which actual fraudulent
intent could be inferred for Rule 12(b)(6) purposes.  The
Complaint, as amended, also sufficiently notifies Defendant of
the specific transactions alleged to be fraudulent conveyances
and the attendant circumstances, in satisfaction of Rule 9(b).
See Seville Indus., 742 F.2d at 791 (stating that allegations of
"date, place or time" fulfill the basic goal of Rule 9(b)).  The
Motion will be denied with respect to Counts I and III.

**B.    The Complaint Adequately Alleges Constructive
       Fraudulent Transfers**

Section 548(a)(1)(B) authorizes the avoidance of transfers
of interests in the debtor's property occurring within two years
prior to the petition date if the debtor "received less than a
reasonably equivalent value in exchange for such transfer or
obligation; and (ii)(I) was insolvent on the date that such
transfer was made or such obligation was incurred . . ." 11
U.S.C. § 548(a)(1)(B)(i) and (ii)(I).

As explained above, section 544 authorizes avoidance of
transfers under applicable state law. 11 U.S.C. § 544(b)(1).
Plaintiffs here have alternatively pled claims under the

fraudulent conveyance laws of Georgia, New York, and Delaware.[4]
These laws do not meaningfully vary from the requirements of
Bankruptcy Code section 548(a)(1)(B) for present purposes.

Thus, to survive a motion to dismiss, a constructive
fraudulent transfer claim predicated on the foregoing provisions
must allege sufficient facts that plausibly show: (i) a transfer
within the applicable time period; (ii) the debtor's insolvency;
and (iii) a lack of reasonably equivalent value (or fair
consideration).

Here, the Complaint alleges transfers within two years
before the Petition Date.  (Compl. ¶¶ 32, 33, 35).  There is no

---

[4]    Plaintiffs allege that the Transfers are avoidable as
constructively fraudulent transfers pursuant to the following:
    Section 1305(a) of the Delaware Code and section 18-2-75
(a) of the Georgia Code, stating in pertinent part that: "A
transfer made or obligation incurred by a debtor is fraudulent
as to a creditor whose claim arose before the transfer was made
or the obligation was incurred if the debtor made the transfer
or incurred the obligation without receiving a reasonably
equivalent value in exchange for the transfer or obligation and
the debtor was insolvent at that time or the debtor became
insolvent as a result of the transfer or obligation." 6 Del.
Code Ann. tit. 6, § 1305(a) (2010); Georgia Code Ann. § 18-2-75
(2009).
    Section 274 of New York's Debtor & Creditor Law, stating in
pertinent part that: "Every conveyance made without fair
consideration when a person making it is engaged or is about to
engage in a business transaction for which the property
remaining in his hands after the conveyance is an unreasonably
small capital, is fraudulent as to creditors and as to other
persons who become creditors during the continuance of such
business or transaction without regard to his actual intent."
N.Y. Debt. & Cred. § 274 (2010).

dispute that the Transfers were made within the applicable time period.

The Complaint also sufficiently alleges insolvency.  The Complaint attaches several of Charys and its affiliates' public securities filings showing that they maintained a working capital deficit ranging between approximately $38 million and $126 million during the relevant time period. (Compl. ¶¶ 39, 41, 43).  In addition, the Complaint alleges that during the relevant time period, Charys's then-current liabilities exceeded their net assets (excluding goodwill) by not less than approximately $23 million.  (Id. at ¶¶ 40, 42, 44).  The Complaint also asserts that Charys's tangible assets were overstated.  (Id. at ¶¶ 46-48).  Although Charys reported significant intangible goodwill as an asset, the Complaint alleges that any goodwill was rendered valueless by going concern opinions issued by Charys's outside independent accountants that questioned the Debtors' viability.  (Id. at ¶ 45).

Assuming the truth of the above facts and taking all inferences in Plaintiffs' favor, Plaintiffs have adequately alleged that the Transfers were made at a time when Charys was insolvent.  See Joseph v. Frank (In re Troll Communications, LLC), 385 B.R. 110, 123-24 (partially denying motion to dismiss and finding insolvency adequately pled where complaint alleged

17

facts showing that debtors' liabilities exceeded their assets as of a year prior to bankruptcy filing and continuing through petition date and where going concern opinion rendered debtors' goodwill valueless).

The Complaint must also adequately allege a lack of reasonably equivalent value (or fair consideration) to support a constructive fraudulent transfer claim.  On this element, the Complaint alleges that "Charys received less than a reasonably equivalent value in exchange for the [Transfers] because Growth Management did not and could not provide any meaningful service to Charys under the Agreement, or otherwise provide meaningful services for Charys as McMahan was its exclusive agent, and upon information and belief, Charys dealt exclusively with McMahan." (Compl. ¶ 38).  In support of this assertion, Plaintiffs attach the Consulting Agreement.

The term "reasonably equivalent value" is not defined in the Bankruptcy Code, however, the Third Circuit has noted that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"  VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007).  To determine reasonably equivalent value, the Third Circuit requires a "totality of the circumstances" analysis, taking into account "the good faith of the parties, the difference between the amount paid and the market value, and whether the transaction

18

was at arms length." <u>Peltz v. Hatten</u>, 279 B.R. 710, 736 (D.
Del. 2002) (quoting <u>Mellon Bank, N.A. v. Official Comm. of
Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)</u>, 92
F.3d 139, 148-49 (3d Cir. 1996). This analysis is inherently
fact driven. <u>See</u> <u>Peltz</u>, 279 B.R. at 736.

Plaintiffs here have alleged that the relationship between
Thomas and Crochet and the concealment of the Consulting
Agreement and the Transfers, among other things, show a lack of
good faith between the parties and that the transaction was not
at arm's length.  The Court agrees that a lack of good faith and
the absence of arm's length negotiations can be inferred from
the pled facts.

Plaintiffs additionally allege that Defendant did not, and
could not, provide any valuable services to the Debtors because
McMahon was Charys's sole merger and acquisition service
provider.  Plaintiffs do not specifically allege that the price
paid exceeded market value, but the Court can infer as much from
the allegation that no meaningful services were provided.

Based on the facts alleged in the Complaint and assuming
their truth for purposes of considering the Motion, the Court
can infer that the Debtors did not receive reasonably equivalent
value for the Transfers.  Based on the foregoing, the Motion
will be denied with respect to Counts II and IV.

**C.   The Complaint Adequately States a Claim for Recovery of Avoided Transfers**

Count V of the Complaint seeks to recover any avoided Transfers pursuant Bankruptcy Code section 550(a), which states:

> [e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, . . . [or] 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred . . . from – (1) the initial transferee of such transfer of the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  The Complaint alleges that the Transfers were made directly to "account[s] controlled by Growth Management." (Compl. ¶¶ 32, 33, 35).  Defendant is alleged to have been the initial transferee of Transfers that are avoidable pursuant to section 544 or 548 of the Bankruptcy Code.  The Court will deny the Motion with respect to Plaintiffs' claims under sections 544 and 548 and likewise will deny the Motion with respect to Plaintiffs' section 550 claim.

## VI. CONCLUSION

The Court will deny the Motion. An appropriate Order follows.

By the Court,

_____
Dated:  July 14, 2010        Brendan Linehan Shannon
                             United States Bankruptcy Judge

20